UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL E. MONE

    Plaintiff,

v.                                                            Civil Action No. 04-11009-NMG

DEPARTMENT OF NAVY

    Defendant.
_____/

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff's Freedom of Information Act (FOIA) request concerns a single document: a Litigation Report of investigation of a helicopter crash, that was prepared by and under the direction of attorneys for the use of agency lawyers who would be defending the anticipated tort suits and claims arising out of the accident. Under FOIA, the Department of the Navy may withhold documents from release to the public under exemption b(5) which protects disclosure of "inter-agency or intra-agency memorandums and letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In response to plaintiff's request for a copy of the report, defendant Department of the Navy determined that the entire Litigation Report was privileged under exemption b(5) of the FOIA on two bases - as attorney work-product, prepared in anticipation of claims and litigation against the United States, and as a pre-decisional, intra-agency memorandum containing internal advice, recommendations, and subjective evaluations integral to the deliberative process.

Under controlling precedent, defendant properly withheld the entire Litigation Report from Mr. Mone, and so the Court should grant this Motion and rule that Defendant is entitled to judgment as a matter of law.

**L.R. 56.1 STATEMENT OF UNDISPUTED FACTS**

1. Plaintiff Michael E. Mone is an attorney representing Fred Babcock, Joseph Canney, Thomas Gregorio, and John Kelly, who were allegedly injured in an accident on January 5, 2002, at Northeastern University's Parsons Field in Brookline, Massachusetts. Complaint Tab 1, Tab 2.

2. On June 11, 2002, Mr. Mone wrote to Headquarters, United States Marine Corps, alleging that the injuries occurred during a rehearsal helicopter landing conducted by Marine pilots in anticipation of a visit by the President on January 8, 2002. Complaint Tab 1, Tab 2. Based on these allegations, Mr. Mone requested pursuant to the FOIA a copy of any and all documents, including investigations, related to the events. Complaint Tab 1, Tab 2. Mr. Mone has also filed a separate suit, C.A. No. 04-11413-EFH, against the Department of the Navy under the Federal Tort Claims Act, 28 U.S.C. §1346, for damages from the same incident.

3. On September 12, 2002, Headquarters United States Marine Corps, Department of the Navy, informed Mr. Mone that a Litigation Report was prepared concerning the incident and that all Litigation Reports are forwarded to and held by the Deputy Assistant Judge Advocate General for Claims, Investigations, and Torts Litigation Division (Code 15). Complaint, Tab 2.

4. Mr. Mone's FOIA request was therefore forwarded to that division for a response. On November 1, 2002, the Deputy Assistant Judge Advocate General for Claims, Investigations, and Torts Litigation denied Mr. Mone's request for a copy of the Litigation Report pursuant to FOIA exemption (b) (5), finding that the entire report was prepared in anticipation of litigation in accordance with section 0210 of the Judge Advocate General's Manual and therefore constituted attorney work product. Complaint Tab 3, 5; Declaration by Captain Paul Delaney; USN, ¶¶ 3-10; Declaration by Major Eric Rishel, USMC.

5.      On December 19, 2002, Mr. Mone appealed the denial of his FOIA request to the Deputy Assistant Judge Advocate General for General Litigation (Code 14).  Within the Department of the Navy, the Secretary is the final authority to adjudicate appeals of denied FOIA requests.  See 5 U.S.C. §552.  The Secretary promulgated Secretary of the Navy Instruction (SECNAVINST) 5720.42F, after notice and public comment, to implement policies and procedures under the FOIA within the Department of the Navy.  This regulation delegated the Secretary's appellate authority over denied FOIA requests to the Judge Advocate General who further delegated it to the Deputy Assistant Judge Advocate General (General Litigation). See SECNAVINST 5720.42F.

6.      On January 29, 2003, the Deputy Assistant Judge Advocate General (General Litigation) denied Mr. Mone's appeal based on exemption (b)(5) of the FOIA, finding that the entire Litigation Report was work product because it was prepared by an attorney in anticipation of claims or litigation against the United States and that the Litigation Report constituted pre-decisional, intra-agency memoranda, containing internal advice, recommendations, and subjective evaluations that are integral to the deliberative process.[1]  Complaint Tab 4, 5.  The Deputy Assistant Judge Advocate General further held that release of the Litigation Report would jeopardize a governmental interest in fostering the free flow of advisory opinions within the Department of the Navy and therefore that the entire report was properly withheld.  Id.

---

[1] For this Court's review of that decision, defendant has filed herewith two declarations that describe the purposes and content of the withheld Litigation Report in reasonable detail to support the applicability of exemption b(5) of the FOIA.  Together with the attachments to Mr. Mone's Complaint, these declarations establish that no genuine issue of material fact exists that the Department of the Navy properly denied the request.

**ARGUMENT**

**I. Standard for Motion for Summary Judgment in a FOIA Case**

Summary judgment shall be granted to the moving party if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of demonstrating to the court the absence of a genuine issue of any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Therefore, "only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment."  Id.

When presented with a motion for summary judgment, a court should "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28, 33-34 (1st Cir. 1994) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 507 U.S. 1030 (1993)).  A summary judgment motion should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Id. at 34 (quoting Fed. R. Civ. P. 56(c)); see Anderson v. Liberty Lobby, 477 U.S. 242 (1986), Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

When an aggrieved party files an action under the FOIA because documents are withheld, the Government agency has the burden to demonstrate the applicability of a claimed exemption.  State of Maine v. United States Department of the Interior, et al., 298 F.3d 60, 65 (1st Cir. 2002).  The district court must make a de novo determination whether the agency has

met its burden. Id.

Summary judgment is a proper means of resolving a suit under the FOIA. See National Wildlife Fed'n v. U.S. Forest Service, 861 F.2d 1114 (9th Cir. 1988). In an action brought under the FOIA, summary judgment is appropriate if the affidavits submitted in support of the motion "describe the documents and justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

Under the FOIA, exemption b(5) protects from disclosure "inter-agency or intra-agency memorandums and letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In short, agency records are exempt from disclosure under FOIA if they are not discoverable in civil litigation. See, e.g., United States v. Weber Aircraft Corp., 465 U.S. 792, 799-800 (1984); NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148 (1975) ("Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency").

In this case, the Department of the Navy withheld disclosure of a Litigation-Report Investigation pursuant to exemption b(5) under two privileges: the attorney work-product privilege and the deliberative process privilege. The Department of the Navy has the burden of demonstrating that the requested documents are exempted from disclosure. 5 U.S.C. § 552(a)(4)(B); Assembly of California v. United States Department of Commerce ("Assembly"), 968 F.2d 916, 920 (9th Cir. 1992). The declarations by Captain Paul Delaney, USN and Major Eric Rishel, USMC meet this burden and establish as a matter of law that the Department of the

Navy properly withheld disclosure of the Litigation Report under both privileges.

**II. <u>The Work Product Privilege Protects Navy Litigation Reports from Disclosure</u>**.

FOIA, exemption 5, 5 U.S.C. section 552(b)(5), protects from disclosure those documents covered by the attorney work-product privilege.  <u>See</u> <u>United States v. Weber Aircraft Corp.</u>, 465 U.S. 792 (1984).  <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 154-55 (1975) (recognizing that Exemption 5 incorporates work product privilege); <u>see</u> also <u>Hill Tower v. Department of the Navy</u>, 718 F. Supp. 562 (N.D. Tex. 1988).  This privilege protects from disclosure documents and other memoranda prepared by an attorney in contemplation of litigation.  <u>See</u> <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947); Fed. R. Civ. P. 26(b)(3).  The privilege is broad and "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated."  <u>Schiller v. NLRB</u>, 964 1205, 1208 (D.C. Cir. 1993).  Furthermore, the privilege extends even to factual information and witness statements contained in the covered document.  <u>See</u> <u>Weber Aircraft Corp.</u>, <u>supra</u>; <u>Martin v. Office of Special Counsel, Merit Systems Protection Board</u>, 819 F.2d 1181 (D.C. 1987).

To withhold a document under exemption (b) (5) as attorney work product, the government must establish it was prepared under the direction of an attorney in contemplation of litigation.  <u>Senate of Puerto Rico v. the United States Department of Justice</u>, 823 F.2d 574 (D.C. Cir. 1987).  The test is whether "in light of the nature of the document an the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  <u>Id.</u>; <u>Maine</u>, 298 F.3d 60, 68 (1st Cir. 2002).

In this case, the purpose of the withheld document, a Litigation Report, is clear based on the declarations by Captain Delaney, Major Rishel and even in the response from the Office of

the Judge Advocate General, attached to Mr. Mone's Complaint.  In fact, the response states, "[t]he Navy prepares litigation reports when an incident is likely to result in a claim or civil litigation against the United States.  The report's primary purpose is to prepare to defend the legal interests of the United States."  Complaint, Tab 5.

The declarations explain that Major Rishel, a Department of the Navy attorney, prepared the Litigation Report under an agency regulation, the Manual of the Judge Advocate General (JAGMAN), that provides specific guidance for investigations conducted for the purpose of anticipating litigation.  See Delaney Declaration at Paragraphs 4-5 and Ex. A; Rishel Declaration.  Paragraph 0209 of the JAGMAN addresses litigation-report investigations and distinguishes those investigations from command investigations also conducted pursuant to JAGMAN:

> Investigations serve many purposes but when an incident is likely to result in claims or civil litigation against or for DON or the United States . . . the primary purpose of the resulting investigation is often to prepare to defends the legal interests of the Department and the United States.  A command should contact a judge advocate at the earliest opportunity prior to commencing a litigation-report investigation to determine if a ligation-report investigation is the appropriate type of investigation to be conducted under the circumstances.

JAGMAN, paragraph 0209(a).

Unlike a command investigation, a Litigation Report investigation must, be "convened only after consultation with a cognizant judge advocate;" "conducted under the direction and supervision of that judge advocate;" and "conducted primarily in anticipation of claims or litigation."  JAGMAN, paragraph 0209(b).  Here, Major Rishel states that the commanding officer of Marine Helicopter Squadron One convened the Litigation Report and appointed him as the supervising judge advocate in accordance with the JAGMAN's requirements for a Litigation

Report.  Rishel Declaration.

Further, this regulation requires commands within the Department of the Navy to forward all litigation report investigations to the Judge Advocate General as the designated record holder and release or denial authority under the FOIA.  JAGMAN, paragraph 0209 (g)(2).  Both Major Rishel and Captain Delaney state that the Marine squadron forwarded the Litigation Report in this case to the Judge Advocate General, specifically the division with cognizance over tort claims against the Navy.  See Rishel Declaration; Delaney Declaration.

The Complaint itself and all its attachments reflect that the withheld document is a Litigation Report, prepared by a judge advocate, in accordance with the JAGMAN, for the primary purpose of the defending anticipated claims or litigation against the Department of the Navy.  Mr. Mone included a December 19, 2002, letter where he argued that the report in question is not work product because the report was produced as a Marine Corps routing response concerning the involvement of a Marine HMX-1 helicopter in an accident.  Complaint, Tab 4 at 3.  In reaching this conclusion, Mr. Mone relied upon a statement contained in a September 12, 2002, response from Headquarters United States Marine Corps, provided in response to Plaintiff's initial FOIA request.  That response states:

> "[S]ince the subject incident occurred during a rehearsal preceding a January 8th visit by President Bush and was coordinated by members of HMX-1, who have responsibility for the Presidential helicopter, <u>a litigation report</u> was prepared and forwarded to the Deputy Assistant Judge Advocate General for <u>Claims, Investigations, and Torts Litigation Division</u>."

Complaint, TAB 2 (emphasis added).

Nothing in that statement reflects that the investigation was prepared for a reason other than litigation.  Indeed, it shows the opposite: that the report was characterized as a "litigation

report," which was forwarded to the Judge Advocate General for Claims, Investigations, and Torts Litigation Division, indicating that the report was produced primarily for litigation.

Moreover, in <u>Maine v. United States Department of the Interior, et al.</u>, the U.S. Court of Appeals for the First Circuit concluded that anticipated litigation need not be the exclusive or even primary purpose for a document to qualify as work product in the context of the FOIA. <u>Maine</u>, 298 F.3d at 68.  Instead, the First Circuit adopted a less stringent standard where a document constitutes work product, if "in light of the nature of the document an the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." <u>Id</u>.  In this case, the declarations and attachments to Mr. Mone's Complaint establish that the litigation report at issue here meets, indeed  exceeds, the standard in this circuit to qualify as work product under exemption b(5) of the FOIA.

Finally, because the Litigation Report properly qualifies as work product, its parts also qualify, even if they contain only factual material.  The First Circuit has opined that factual material contained within a document subject to the work product privilege often will be embraced within the privilege and properly withheld from disclosure under exemption b(5). <u>Church of Scientology Int'l v. United States Dep't of Justice</u>, 30 F.3d 224, 237 (1st Cir. 1994), <u>citing</u> <u>Martin v. Office of Special Counsel, MSPB</u>, 819 F.2d 1181, 1186 (D.C. Cir. 1987) ("The work product privilege simply does not distinguish between factual and deliberative material.") Captain Delaney explains in his declaration that under this principle, all parts of Navy litigation reports are therefore considered to fall within this privilege.  <u>See</u> Delaney Declaration.  Because attorneys determine even which enclosures are included in a litigation report, the list of enclosures and the enclosures themselves become work product in the context of the entire

litigation report. Id. Accordingly, the Department of the Navy properly denied Mr. Mone's request for any parts of the Litigation Report in this case. Even the list of enclosures is considered work product that is nondiscoverable in litigation and protected from disclosure under the FOIA.

The evidence is uncontroverted that a Department of the Navy attorney prepared the withheld document primarily in anticipation of litigation. It follows therefore, as a matter of law, that the entire Litigation Report is work product, that the Department of the Navy may withhold disclosure of the entire document under exemption b(5) of the FOIA, and that Defendant is entitled to entry of summary judgment.

### III. The Deliberative Process Privilege Protects Navy Litigation Reports from Disclosure.

Materials reflecting an agency's predecisional, deliberative process are protected from civil discovery under the "deliberative process" privilege and are exempt from disclosure under exemption b(5) of the FOIA. Dep't of the Interior v. Klamath Water Users Protective Assoc., 532 U.S. 1, 8 (2001). The deliberative process privilege exists "to prevent injury to the quality of agency decisions." Sears, 421 U.S. at 151. The privilege is intended to promote frank and independent discussion among those responsible for making governmental decisions. Environmental Protection Agency v. Mink, 410 U.S. 73, 86-87 (1973); FTC v. Warner Communications, Inc., 742 F.2d 1156, 1163 (9th Cir. 1984). Accordingly, exemption b(5) of the FOIA covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Carter v. United States Dep't of Commerce, 307 F.3d 1084, 1089 (9th Cir. 2002) (citing Klamath, 532 U.S. at 8 (citation and internal quotation marks omitted)); see also, National

Wildlife Fed'n, 861 F.2d at 1117.

When deciding whether exemption b(5) applies to a withheld document, a court should "focus on whether the document in question is a part of the *deliberative process*." Id. at 1118 (emphasis in original). A document must be both "predecisional" and "deliberative" to fall within the deliberative process privilege. Sears, 421 U.S. at 150; Assembly, 968 F.2d at 920; Nat'l Wildlife Fed'n, 861 F.2d at 1117; Warner, 742 F.2d at 1161 (citing Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)); Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

A document may be predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision." Renegotiation Board v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975); see also, Carter, 307 F.3d at 1089; Assembly, 968 F.2d at 920. Such documents may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Coastal States, 617 F.2d at 866. Furthermore, in determining whether a document is predecisional, the Navy need not identify a specific decision in connection with which the document was prepared. Sears, 421 U.S. at 151 n.18. The Supreme Court recognized that agency deliberations do not always ripen into agency decisions, and that ultimately the privilege is meant to protect the decisional process, rather than any particular document or decision. Id.; Nat'l Wildlife Fed'n, 861 F.2d at 1119. In sum, the a court must determine what deliberative process is involved, and the role played by the documents in issue in the course of that process. Coastal States, 617 F.2d at 866.

As the declarations and attachments to the Complaint make clear, the withheld

documents in this case are entirely predecisional. The documents were prepared to advise the Judge Advocate General and the Secretary of the Navy regarding Mr. Mone's clients' potential civil tort claims and lawsuits against the Department of the Navy. The record provides background, analysis, and recommendations and contemplates future decisions by the Judge Advocate General or the Secretary of the Navy.

The withheld documents also are predecisional because their authors were not exercising decision-making authority, rather they were also recommending possible agency actions to preclude future liability through administrative claims or lawsuits. See Grumman, 421 U.S. at 184-85.[2]

Finally, the documents' authors are subordinates who were providing legal and policy advice to superior officials. See, e.g., Coastal States, 617 F.2d at 868 ("[A] document from a subordinate to a superior official is more likely to be predecisional."). Clearly, the subordinate officers drafted these documents in contemplation of the Judge Advocate General's and the Assistant Secretary of the Navy's decisions regarding the defense of anticipated administrative claims and lawsuits against the Department of the Navy. See Delaney Declaration; Rishel Declaration.

The second prerequisite for application of the deliberative process privilege is that the document is "deliberative." See National Wildlife Fed'n, 861 F.2d at 1117. The key inquiry is whether disclosing the documents would reveal the Navy's decision-making process in such a way as to discourage candid discussion within the Navy and thereby undermine its ability to

---

[2]Moreover, since the Federal Tort Claims Act requires the submission of an administrative claim to a federal agency before suit may be filed in U.S. District Court, such reports serve to advise decisionmakers of the potential or desirability of settlement at the agency level.

perform its functions.  Id. at 1119; Assembly, 968 F.2d at 921.  Thus, the records identified in the declarations are privileged to the extent that they reveal the mental processes of Navy decision-makers.  National Wildlife Fed'n, 861 F.2d at 1119.

A review of the Delaney and Rishel declarations demonstrates the deliberative nature of these documents.  As stated, the withheld documents identify pertinent facts in the context of applicable law and provide recommendations to prevent, if possible, future similar incidents that might lead to injuries and tort liability against the Navy.  Furthermore, failure to protect these materials risks chilling the free exchange of viewpoints, opinions, and recommendations that are essential to informed decision-making.  If this exchange is chilled by disclosure, it will damage the process by which the Navy makes decisions in litigation matters.  This damage is precisely the damage which the deliberative process privilege is meant to protect against.  This Court should give considerable deference to the Navy's explanation of its decisional process because of the Navy's expertise in determining what confidentiality is needed to prevent injury to the quality of its decisions.  Pfeiffer v. CIA, 721 F. Supp. 337, 340 (D.D.C. 1989).

In support of his position, Mr. Mone alleges that his clients are irreparable harmed by the Navy's refusal to release the documents.  Yet a plaintiff's need for a document is absolutely irrelevant for purposes of determining whether the documents should be disclosed under the FOIA.  The Supreme Court has determined that the needs of a particular plaintiff are not relevant to an analysis of whether exemption b(5) applies to a document.  It has held repeatedly that only documents "normally" or "routinely" disclosable in civil discovery fall outside the protection of the exemption. Sears, 421 U.S. at 149 and n.16 (concluding that "it is not sensible to construe the [FOIA] to require disclosure of any document which would be disclosed in the hypothetical

litigation in which the private party's claim is the most compelling"); FTC v. Grolier Inc., 462 U.S. 19, 26 (1983); Weber, 465 U.S. at 799.

## CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that the Court rule as a matter of law that the withheld Litigation Report is entirely exempt from disclosure under 5 U.S.C. §552(b)(5) and enter summary judgment for the Department of the Navy. In the alternative, defendant asks that the Court review the Litigation Report *in camera* to observe for itself the nature and contents of the single document at issue in this litigation.

                Respectfully submitted,
                MICHAEL J. SULLIVAN
                United States Attorney

                  /s/ Barbara Healy Smith
                BARBARA HEALY SMITH
                Assistant United States Attorney
                1 Courthouse Way
                Boston, MA 02210
                Telephone: (617) 748-3100

OF COUNSEL:
GREGORY R. BART
Lieutenant Commander, JAGC, U.S. Navy
Office of the Judge Advocate General
General Litigation Division
Department of the Navy
Washington Navy Yard, Washington, DC
Telephone: (202) 685 - 4592