UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL E. MONE,                    )          C.A. NO. 04-11009-NMG
     Plaintiff,                    )
                               )
v.                                  )
                               )
DEPARTMENT OF THE NAVY,             )
     Defendant.                    )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

In June 2002, plaintiff Michael E. Mone ("Mr. Mone" or "plaintiff") made a request under the Freedom of Information Act ("FOIA") for copies of "any and all documents that pertain to the events and/or investigation associated with" an incident that took place on January 5, 2002 during an aircraft landing rehearsal being conducted in anticipation of President Bush's planned helicopter arrival at a location in Brookline, Massachusetts on January 8, 2002.  Complaint, Tab 1.  The request was made to the Marine Corps, Complaint Tab 1, but was subsequently forwarded to the Department of the Navy ("Navy" or "defendant").  Complaint, Tab 2.  After identifying a single document responsive to Mr. Mone's FOIA request – "the <u>Manual of the Judge Advocate General</u> investigative report into the circumstances surrounding the flight rehearsal . . . on January 5, 2002" ("investigative report"), Complaint, Tab 3 – the Navy denied Mr. Mone's request on the grounds that the report was attorney work product exempt from disclosure under 5 U.S.C. § 552(b)(5) ("Exemption (b)(5)" or "Exemption 5").  Complaint, Tab 3.  Mr. Mone appealed this denial; the Navy denied Mr. Mone's appeal on the grounds that the investigative report was subject to protection under Exemption

(b)(5) as work product and as "pre-decisional, intra-agency memoranda." Complaint, Tabs 4-5. Mr. Mone filed the instant suit for *de novo* review of the Navy's denial of his FOIA request, Complaint; the case is before the Court on the Navy's motion for summary judgment on the grounds that the investigative report is exempt from production under Exemption (b)(5)'s work product and deliberative privileges.

As discussed more fully below, the Navy's motion for summary judgment should be denied. First, the Navy has failed to show that the disputed investigative report constitutes work product. The Navy has not shown that the report was prepared in accordance with its regulations for the conduct of Litigation-Report Investigations, meaning that the investigation report does not qualify for the work product protections potentially accorded to such documents. Likewise, the Navy's supporting materials do not show that the report includes the opinions or legal conclusions of a government attorney, nor that the investigative report was prepared in contemplation of litigation, rather than for some other purpose. Second, the Navy has also failed to demonstrate that the investigative report is protected under Exemption (b)(5)'s deliberative process privilege. The Navy has not shown that the investigative report was prepared in advance of any specific decision toward which any deliberations recorded in the report were directed, nor has it made any showing that the report either misrepresents or prematurely discloses Navy policy or decisions. As the Navy has failed to show that the investigation report satisfies the requirements for protection under either the work product or deliberative process privileges included in Exemption (b)(5), it has not demonstrated a legitimate basis for its failure to produce the investigative report pursuant to Mr. Mone's FOIA request.

Lastly, even if the Court finds that the Navy has shown its entitlement to withhold the investigation report as a whole, the Navy has not met its obligations under the FOIA to produce any segregable factual portions of the investigative report.

After reviewing Mr. Mone's FOIA claim and the Navy's responses, the Court should deny the Navy's motion for summary judgment and should order the Navy to honor Mr. Mone's June 12, 2002 FOIA request by producing the investigative report and any other responsive documents.

## PLAINTIFF'S RESPONSE
## TO DEFENDANT'S L.R. 56.1 STATEMENT OF UNDISPUTED FACTS

1.      Admitted.

2.      Admitted.

3.      The September 12, 2002 letter from Headquarters United States Marine Corps identified only a single document, "a litigation report," responsive to Mr. Mone's FOIA request.  Complaint, Tab 2.  The letter indicated that that particular report was forwarded to the Deputy Assistant Judge Advocate General for Claims, Investigations, and Tort Litigation Division (Code 15).  The letter did not indicate whether or not this forwarding process was common to all litigation reports.

4.      On November 1, 2002, P.A. Leonard, Deputy Director, Claims, Investigations, and Tort Litigation denied Mr. Mone's June 11, 2002 FOIA request[1] on the grounds that the "Manual of the Judge Advocate General investigative report" concerning the January

---

[1] The Navy's November 1, 2002 letter describes Mr. Mone's June 11, 2002 FOIA letter as "requesting a copy of the Manual of the Judge Advocate General investigative report into the circumstances surrounding the flight rehearsal at the Northeastern University Athletic Field in Brookline, Massachusetts, on January 5, 2002."  Complaint, Tab 3.  In fact, Mr. Mone's FOIA request sought "a copy of any and all documents that pertain to the events and/or investigation associated" with the January 5, 2002 accident.  Complaint, Tab 1.  Mr. Mone has understood that the investigative report discussed in the Navy's responses to his FOIA request is the single existing document that would be responsive to his original request.  If, however, additional responsive documents exist, Mr. Mone requests that they be properly identified and produced.

3

5, 2002 incident giving rise to the FOIA request was exempt from disclosure under 5 U.S.C. sec. 552(b)(5).[2]

5.      Admitted.

6.      The plaintiff admits that the Deputy Assistant Judge Advocate General (General Litigation) denied his request on January 29, 2003 based on Exemption (b)(5) of the FOIA, but denies that the declarations submitted by the defendant in support of its motion, whether or not combined with the other facts in the record, justify this Court's grant of summary judgment on the plaintiff's FOIA claims. To the contrary, these declarations demonstrate that the plaintiff is entitled to disclosure of some or all of the investigative report at issue.

7.      The defendant has identified only a single litigation report as responsive to the plaintiff's FOIA request. The defendant has produced no documents, nor has it produced in a redacted version of any document or in any other format any facts segregated from the litigation report at issue in this case.

## DISCUSSION

"The FOIA's statutory scheme serves the 'basic purpose' of 'ensuring an informed citizenry, vital to the functioning of a democratic society' and 'opening agency action to the light of public scrutiny.'" *Maine v. United States Dep't of the Interior*, 124 F. Supp. 2d 728, 736 (D. Me. 2001)("*Maine I*"), *vacated in part on other grounds, Maine*

---

[2] The Navy's motion, and the Navy's January 29, 2003 denial of the plaintiff's administrative appeal in this matter, Complaint, Tab 5, indicate that section 0210 of the Judge Advocate General's Manual ("JAGMAN") governs preparation litigation reports, Complaint, Tab 5, and that the report's preparation "in accordance with section 0210" is the basis of the document's entitlement to work product protection. Defendant's Statement of Facts, ¶ 4. According to the supporting materials attached to the Navy's motion, however, section 0210 concerns "Courts and Boards of Inquiry," while section 0209 governs "Litigation-Report Investigations." Delaney Declaration, Exh. A. The Delaney Declaration states that the investigative report was prepared according to section 0209 of the JAGMAN. Delaney Declaration, ¶ 5.

*v. United States Dep't of the Interior*, 298 F.3d 60 (1ˢᵗ Cir. 2002)("*Maine II*")(citations

omitted).  To satisfy that purpose, the FOIA is "without question . . . broadly conceived,"

*Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 35 L. Ed. 2d 119, 93 S. Ct.

827 (1973), and its exemptions are "narrowly construed."  *See, e.g., Department of*

*Justice v. Julian*, 486 U.S. 1, 8, 100 L. Ed. 2d 1, 108 S. Ct. 1606 (1988).  Consistent with

the FOIA's pro-disclosure policy, it is the defendant's burden to show the applicability of

any exemption it claims from production, *Maine I*, 124 F. Supp. 2d at 736; the district

court then makes *de novo* assessment of validity of defendant's exemption claim.  *Id.*

"An agency's burden of establishing a FOIA exemption is significant, and conclusory

assertions of privilege by a defendant agency regarding an exemption will not fulfill its

burden of proof in a FOIA action."  *Id.* (citing *Coastal States Gas Corp. v. Dep't of*

*Energy*, 617 F.2d 854, 861 (D. C. Cir. 1980)).

## I.    STANDARD OF REVIEW.

### A.    Summary Judgment On *De Novo* Review.

As a general matter, summary judgment is warranted only if, after reviewing the

facts in the light most favorable to the nonmoving party, no genuine issues of material

fact remain, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 91 L. Ed. 2d 202, 106 S.

Ct. 2505 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548

(1986); *Rocafort v. IBM Corp.*, 334 F.3d 115, 119 (1ˢᵗ Cir. 2003).  The burden is on the

moving party to make a preliminary showing that no genuine issue of material fact exists.

*United States v. President & Fellows of Harvard College*, 323 F. Supp. 2d 151 (D. Mass.

---

The plaintiff assumes that the reference to section 0210 is an error, and that the Navy intended to refer to section 0209.

2004). "Conclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

In cases calling for *de novo* review, the ordinary summary judgment standard applies. *See Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264, 268 (1st Cir. 1994); *see also Golden Rule Ins. Co. v. Atallah*, 45 F.3d 512, 517 n.6 (1st Cir. 1995). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Radford Trust v. First UNUM Life Ins. Co. of Am.*, 321 F. Supp. 2d 226, 239 (D. Mass. 2004)(citing *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 490, 119 L. Ed. 2d 265, 112 S. Ct. 2072 (1992)).

> **B.    In Keeping With The Purposes Of The FOIA, Exemption (b)(5) Must Be Narrowly Construed.**

There can be no dispute that the FOIA was passed with the intention of making governmental decisions and decision-making processes available for examination by those most deeply affected by those decisions: the American people. As the First Circuit has summarized it, "[t]he FOIA was designed to expose the operations of federal agencies to public scrutiny without endangering efficient administration, as a means of deterring the development and application of a body of 'secret law.'" *Providence Journal Co. v. United States Dep't of the Army*, 981 F.2d 552, 556 (1st Cir. 1992)(citing *Department of the Air Force v. Rose*, 425 U.S. 352, 360-61, 48 L. Ed. 2d 11, 96 S. Ct. 1592 (1976); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153, 44 L. Ed. 2d 29, 95 S. Ct. 1504 (1975)). The FOIA "presumes public entitlement to agency information." *Id.* Accordingly, the courts require that "an agency which would withhold information must establish its right to a FOIA exemption." *Id.* (citing 5 U.S.C. sec. 552(a)(4)(B)). These

exemptions are limited to those identified in the FOIA itself; the withholding agency has the burden of establishing the applicability of the claimed exemption not only to each document it withholds, but to each portion of each such withheld document.  *See Ashley v. United States Dep't of Labor*, 589 F. Supp. 901, 905-906 (D.C. Cir. 1983).

Exemption (b)(5) of the FOIA permits the withholding of certain agency documents "which would not be available by law to a party other than an agency in litigation with the agency."  *Maine I,* 124 F. Supp. 2d at 738-39 (quoting 5 U.S.C. sec. 552(b)(5)).  The courts have interpreted Exemption (b)(5) to permit withholding of documents normally privileged in civil discovery.  *Id.* (quoting *Church of Scientology Int'l v. United States Dep't of Justice*, 30 F.3d 224 (1st Cir. 1994)), including the work product and deliberative process privileges claimed by the Navy in this case.  *Id.*  Like all FOIA exemptions, Exemption (b)(5) is to be construed narrowly, *Julian*, 486 U.S. at 8; *Curran v. Department of Justice*, 813 F.2d 473, 473-74 (1st Cir. 1987), and any "doubts are customarily to be resolved in favor of openness."  *Irons v. FBI*, 811 F.2d 681, 685 (1st Cir. 1987).  "FOIA's general philosophy remains . . .  one of 'full agency disclosure,' (citations omitted), and courts have the obligation to interpret its reach 'generously, in order to achieve the FOIA's basic aim:  sunlight.'"  *Church of Scientology Int'l v. United States Dep't of Justice*, 30 F.3d 224, 229 (1st Cir. 1994)(citing *Aronson v. Internal Revenue Serv.*, 973 F.2d 966, 966 (1st Cir. 1992); *United States Dep't of Justice v. Landano*, 508 U.S. 165, 124 L. Ed. 2d 84, 113 S. Ct. 2014, 2024 (1993)).

## II.    THE NAVY HAS NOT SHOWN THAT THE INVESTIGATIVE REPORT IS PROTECTED AS WORK PRODUCT UNDER EXEMPTION (b)(5).

In order to withhold a document based on Exemption (b)(5)'s "work product" privilege, the agency asserting the privilege must prove not only that the information

constitutes or includes an attorney's mental impressions or legal theories*, see, e.g.,* Fed. R. Civ. P. 26, but also that the document was prepared under the direction of an attorney in contemplation of particular litigation.  *See Church of Scientology*, 30 F.3d at 236 (citations omitted).  The First Circuit has held, in accord with other jurisdictions, that "'documents prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation'" are not privileged.  *See Maine II*, 298 F.3d at 70 (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)). "[T]his is true even if the documents aid in the preparation of litigation."  *Id.* The fact that the agency creating the requested document predicted that *some* litigation was likely in the future is not enough to bring a requested document under the work product privilege: "[t]he mere relation of documents to litigation does not automatically endow those documents with privileged status."  *Id.* at 69.

The Navy's argument for the applicability of Exemption (b)(5)'s work product privilege in this case depends upon the its ability to show that the investigative report at issue in this case was prepared in contemplation of litigation against the United States arising out of the incident on January 5, 2002.  *Id.*  As the courts have recognized, military investigative reports can be and are prepared for reasons other than litigation, including for example, to address and improve air safety, as routine documentation of aircraft-related mishaps, or for other intra-agency purposes.  *See, e.g., Cooper v. Department of the Navy*, 558 F.2d 274, 275-76 (5th Cir. 1977)(discussing and comparing purposes of Judge Advocate General's Manual Investigations and Aircraft Accident Safety Investigations), *cert. denied,* 444 U.S. 926, 62 L. Ed. 2d 183, 100 S. Ct. 266 (1979).  The work product privilege under Exemption (5)(b), however, applies only

where the document in question was prepared in anticipation of and because of particular litigation. *See, e.g.,* Fed. R. Civ. P. 26(b)(3); *Maine II,* 298 F.3d at 68-69; *In re Lernout & Hauspie Sec. Litig.,* 222 F.R.D. 29, 36 (D. Mass. 2004)(citing *In re Grand Jury Subpoena*, 220 F.R.D. 130, 148 (D. Mass. 2004)). Here, the Navy suggests two bases for application of the work product privilege to the investigative report responsive to Mr. Mone's FOIA request: first, that the document was prepared as a Litigation Report under the Manual of the Judge Advocate General ("JAGMAN"), and so is by definition prepared in anticipation of litigation; and second, that the attorney who authored the document has sworn that the document was prepared for that purpose. Unfortunately for the Navy's exemption claims, however, neither the Navy's memorandum nor the affidavits filed with it justify summary judgment based on these arguments.

### A. The Navy Has Failed To Show That The Investigative Report Was Prepared In Accordance With The JAGMAN Regulations Governing "Litigation-Report Investigations."

In order to validate its claim that the investigative report at issue here was prepared for the purposes of litigation, as opposed to some other purpose, and is therefore subject to Exemption (b)(5)'s work product protections, the Navy relies on the argument that the document is a "Litigation Report," Def's. Mem. at 1, "prepared . . . under an agency regulation, the Manual of the Judge Advocate General (JAGMAN), that provides specific guidance for investigations conducted for the purpose of anticipating litigation." Def's. Mem. at 7 (citing Delaney Declaration at ¶¶ 4-5 and Ex. A; Rishel Declaration). The evidence, however, does not support this categorization. As a careful reading of the Delaney and Rishel declarations demonstrates, the investigative report was not prepared in strict accordance with the requirements of the JAGMAN. Specifically, the defendant's

papers show that in convening the investigation on which the disputed report was based, the Navy failed to adhere to the regulations governing both the form and substance of convening orders for Litigation-Reports. *See* JAGMAN, § 0209(d) ("Convening order").

Pursuant to Naval regulations, a litigation-report originates with an appointing order issued by the commanding officer of the Aircraft Group of which the aircraft involved in an incident or accident targeted for investigation was a part. *See Hill Tower, Inc. v. Department of Navy,* 718 F. Supp. 562, 566 (N.D. Tex. 1988). In order to meet the requirements for a litigation-report investigation as defined under the JAGMAN, the "investigation shall – be convened in writing. . . .", JAGMAN, § 0209(e)(1)(a), Ex. A to Delaney Declaration, and "*shall specifically state* that: 'This investigation is being convened in contemplation of litigation and for the express purpose of assisting attorneys representing the interests of the United States in this matter.'" *Id.*, § 0209(d)(2) (emphasis added).

In this case, the defendant's supporting papers make it clear that the requirement of a written convening order was not met.[3] According to the Rishel Declaration:

> the Commanding Officer, Marine Helicopter Squadron One *verbally* ordered Major Skankey to conduct his investigation as a Litigation Report Investigation under the JAGMAN . . . . Rishel Declaration, p. 2 (emphasis added).

---

[3] Major Rishel's declaration does not specify that his declaration is based on his personal knowledge of the substance or circumstances of the order he believes was given by the Commanding Officer, Marine Helicopter Squadron One, Rishel Declaration, nor does the Navy provide declarations from either Major Skankey, the purported recipient of the order or from the Commanding Officer who allegedly gave the order. It is the plaintiff's view that the Navy has provided no admissible evidence, as required under Fed. R. Civ. P. 56(e), to support the contention that a convening order was given at all, or, if it was, to support the Navy's claim to what the substance of that order was. *See Piper & Marbury LLP v. United States Postal Serv.*, 2001 U.S. Dist. LEXIS 2492, at *4 (D.C. Cir. 2001)(in order for agency to meet its burden in claiming FOIA exception, agency's supporting affidavits must be based on personal knowledge (citing *Weisberg v. Department of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1988)).

In addition, under the Navy's own regulations, the convening order "*shall*[4] contain" the following specific wording, which is set out in the text of section 0209 in quotations:

> "This investigation is being convened and your report is being prepared in contemplation of litigation and for the express purpose of assisting attorneys representing the interests of the United States in this matter."  JAGMAN, § 0209(d)(2).

The Navy provides no evidence that the verbal convening order that motivated the preparation of the investigative report at issue here included this language.  Given the courts' mandate to interpret all FOIA exemptions narrowly, and the policy of openness that serves as the FOIA's overarching purpose, these points are not pedantic attacks on minor deviations from the letter of the Naval regulations.  In *Hill Tower*, a case specifically considering the effect of the Navy's failure to include mandated convening order language[5], the court ruled the Navy's omission fatal to the agency's efforts to use Exemption (b)(5) to shield its investigative reports from production under the FOIA.  *Hill Tower,* 718 F. Supp. at 567.  In ruling that the JAGMAN report did *not* come within the attorney work-product privilege, the court specifically noted that

> the language concerning anticipated litigation is the only language in the paragraph set out in quotations. . . .*For the JAG Manual report to come within the attorney work-product privilege, the appointing order should have contained the express language provided in paragraph 0602.  Id.* at 567 (emphasis added).

---

[4] Emphasis added.
[5] The language at issue in that case was nearly identical to the language included in section 0209 of the portion of the JAGMAN attached to the Delaney Declaration.  The regulation cited in *Hill Tower* required that the order convening a JAGMAN investigation intended to gather information for defense of a legal action against the United States should contain the following language:  "'This investigation is being convened because of anticipated litigation and for the purpose of assisting attorneys representing the interests of the United States in this matter.'"  *Hill Tower*, 718 F. Supp. at 566.

Based on this finding, and its finding that the JAG Manual report on the Marine aircraft crash at issue in its case was "a document created in the normal routine of the Defendant, that it was created for several purposes, not just litigation," the *Hill Tower* court denied the Navy's motion for summary judgment, granting plaintiffs' cross-motion for summary judgment. *Id.*

  B.  **The Rishel Declaration Does Not State That The Investigative Report Contains His Mental Impressions Or Legal Theories.**

In his declaration, attached in support of the Navy's memorandum, judge advocate general Major Eric C. Rishel describes in some detail his involvement in the preparation of the investigative report. Although Major Rishel describes himself as "the primary author of the Litigation Report," Rishel Declaration at 2, it is not clear whether he is the sole author, or if he is not, whether the report's other authors were attorneys. *See* Rishel Declaration. Likewise, although the Delaney Declaration states that the investigative report is broken down into four subsections titled "Preliminary Statement," "Findings of Fact," "Opinions" and "Recommendations," Delaney Declaration, ¶ 10, none of the Navy's materials conclusively shows that any of those sections includes *attorney* opinions. *See* Delaney Declaration; Rishel Declaration. In the absence of this specific information confirming that the reports include the mental impressions or legal theories of governmental attorneys, the Navy's motion for summary judgment on work product grounds amounts to a request exemption from the FOIA's production requirements based on pure *assumption* that the report includes protected information. Such a leap is beyond the Court's duty and, arguably, beyond its discretion. *See, e.g., Julian*, 486 U.S. at 8 (FOIA exemptions construed narrowly); *Maine I*, 124 F. Supp. 2d at 736 (agency claiming FOIA exemption has burden of showing exemption's

applicability).  It is the Navy's burden to show that the work product privilege applies;

the Navy's having failed to do so, the Court should not now shoulder the burden on the

Navy's behalf.

Here, the Navy has failed to show that the investigative report at issue was

prepared according to its own rules for preparation of a "Litigation-Report" under the

JAGMAN, § 0209[6] or on any other basis.  With that in mind, the Court should deny the

Navy's motion for summary judgment and should order the Navy to produce the disputed

report in its entirety to the plaintiff pursuant to plaintiff's June 11, 2002 FOIA request.

## III.    THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT APPLY, AS THE NAVY HAS FAILED TO SHOW THAT THE INVESTIGATIVE REPORT WAS EITHER "PREDECISIONAL" OR "DELIBERATIVE."

The Navy's alternative rationale for withholding the investigative report

concerning the January 5, 2002 incident is that it and all factual information included in it

fall within the deliberative process privilege under Exemption (b)(5).  To qualify for

privilege under Exemption 5, a document must be both "predecisional" and

"deliberative."  *Providence Journal*, 981 F.2d at 557 (citing *Dow Jones & Co. v.

Department of Justice*, 908 F.2d 1006, 1008-09 (D.C. Cir. 1990)).  In the First Circuit, a

document will be considered "predecisional" if the agency can (1) "pinpoint the specific

agency decision to which the document correlates," (2) establish that the document's

author prepared the document for the purpose of assisting the agency official charged

---

[6] In addition, even if the investigative report had been created as a Litigation-Report as defined in the JAGMAN, it would not automatically be protected from discovery.  *See, e.g., Cooper v. Department of the Navy*, 558 F.2d 274, 279 (5th Cir. 1977)(describing Judge Advocate General's Manual Investigations as "primary investigations" conducted by an "administrative fact-finding body" having the primary function of finding and recording "clearly expressed and consistent findings of fact," reasoning that "the basic thrust of the entire [JAGMAN Litigation-Report] project is fact-oriented:  the uncovering and documenting of the facts of the accident. . . .," and finding that such reports "will normally be subject to disclosure *in toto*, despite Exemption 5 of FOIA.").  Given the strong policy toward disclosure of the factual components of

with making the agency decision, and (3) verify that the document was created before the "decision" to which it relates. *See id.* (citations omitted). In this case, the Navy has failed to satisfy the first prong of the test, in that it has failed to point to any "specific agency decision" in connection with which the investigative report was prepared. The Navy's claims that the privilege is intended to protect the deliberative process in the abstract, regardless of whether that deliberation leads to any decision, Def's. Mem. at 11, overlook the narrow construction given to FOIA exemptions in this and other jurisdictions.[7] *See, e.g., Julian,* 486 U.S. at 8 (exemptions to be narrowly construed); *Curran,* 813 F.3d at 473-74 (same); *Irons,* 811 F.2d at 685 (same); *Lacy v. United States Dep't of Navy*, 593 F. Supp. 71, 77 (D. Md. 1984)(same, Exemption 5). Having failed to identify the "specific agency decision" required under the first part of the test, it follows that the Navy is likewise unable to satisfy the test's remaining two prongs, each of which is dependent upon the existence of such a specific decision. *See Providence Journal*, 981 F.2d at 557.

Further, even if the disputed report were to qualify as "predecisional," the record in this case does not carry the Navy's burden of showing that the investigative report was "deliberative" as required in this circuit. A predecisional document will be considered "deliberative" if (1) the document "'formed an essential link in specified consultative process,'" (2) the document reflects the "'personal opinions of the writer rather than the policy of the agency,'" and (3) if the document were released, it would "'inaccurately reflect or prematurely disclose the views of the agency.'" *Id.* at 559 (quoting *National*

---

even those documents otherwise exempted from production under the FOIA, *see infra*, § IV, there is ample basis for ordering production of the investigative report at issue in this case.

*Wildlife Fed'n v. Forest Serv.,* 861 F.2d 1114, 1118-19 (9th Cir. 1988)).  Putting aside the Navy's self-serving and conclusory descriptions of the nature and purpose of the investigative report, there is no evidence in any of the correspondence from the Navy to the plaintiff, nor in the materials submitted in support of the Navy's motion for summary judgment, that the investigative report at issue is anything more than a factual investigation into the events surrounding the helicopter mishap that occurred on January 5, 2002.  Even conceding for the sake of argument that the report was an "essential link" in a Navy investigation into the January 5, 2002 incident, the Navy has not satisfied the remainder of the test qualifying the report as a "deliberative" document.  First, as discussed above, § II(B), *supra,* other than the heading titles incorporated into the investigative report, *see* Delaney Declaration, ¶ 10, there is no indication in the Navy's papers that the report reflects its author's opinions, or that if it does, that those opinions are not representative of Navy policy. Second, there is no indication in the record that the report's release would "inaccurately reflect or prematurely disclose" the Navy's views on the January 5, 2002 incident or on the investigation into that incident.  In simplest terms, the Navy asks this Court to categorize the investigation report as exempt from FOIA production simply because the Navy says that it is.  *See New England Apple Council, Inc. v. Donovan*, 560 F. Supp. 231, 234 (D. Mass.1983)(noting that calling information "opinion" or "conclusion" does not make it so), *rev'd other grounds*, 725 F.2d 139 (1st Cir. 1984).  The Navy's *ipse dixit* reasoning promotes exactly the kind of governmental obfuscation that the FOIA was intended to prevent, and should be rejected.

---

[7] In addition, such a construction would render meaningless the rest of the "predecisional" test:  the plain meaning of the verb "to deliberate" is "[t]o consult with another or others *as a process of reaching a decision.*"  *The American Heritage Dictionary***,** 378, (2d College Ed. 1985)(emphasis added).

**IV.    EVEN IF THE INVESTIGATIVE REPORT WERE PRIVILEGED, THE NAVY IS OBLIGATED TO PRODUCE ALL SEGREGABLE FACTS INCLUDED IN THE REPORT AND ITS EXHIBITS.**

As discussed above, the Navy has not carried its burden of showing that Exception 5 applies to the investigative report it has identified as the sole responsive document to the plaintiff's June 11, 2002 FOIA request.  Even if the document itself were subject to Exemption 5, however, the Navy would still be obligated to identify and produce any segregable facts included in the report, including its factual attachments.

The overwhelming weight of authority supports the proposition that FOIA requires the disclosure of factual material in even otherwise privileged documents where the factual material is not so "inextricably intertwined" with the deliberative material that its disclosure would compromise the confidential portions of the document.  *American Fed. of Gov't Employees v. United States Dep't of Health & Human Servs.*, 63 F. Supp. 2d 104, 108 (D. Mass. 1999)(citing *Providence Journal*, 981 F.2d at 559); *see, e.g., Church of Scientology Int'l*, 30 F.3d at 236-37 (noting that "as with all exemptions, [the agency] must offer some basis for concluding that there are no segregable, nonexempt portions of the document" and indicating that court considered factual work product to be such segregable, nonexempt information); *Playboy Ents., Inc. v. Department of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982)(deliberative process privilege under Exemption 5 does not protect "'purely factual material appearing in . . . documents in a form that is severable without compromising the private remainder of the documents.'" (quoting *Mink*, 410 U.S. at 91)); *Maine I*, 124 F. Supp. 2d at 738-39 (FOIA requires disclosure of reasonably segregable factual information even from documents which themselves are not discoverable (citing 5 U.S.C. sec. 552(b))); *Ashley*, 589 F. Supp. at 907 ("To

demonstrate that withheld material is protected by the deliberative process privilege, the agency must show . . . that it contains no factual material which is reasonably segregable and may be disclosed without revealing the agency's deliberative processes." (citing *EPA v. Mink*, 410 U.S. 73, 88-90 (1973))); *Powell v. United States*, 584 F. Supp. 1508, 1512 (N.D. Cal. 1984)("FOIA mandates a policy of broad disclosure of government documents . . . . (Citations omitted). . . . Furthermore, sec. 552(b) specifically provides that 'any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.'" (quoting *Church of Scientology*, 611 F.2d at 743-44)); *New England Apple Council, Inc.*, 560 F. Supp. at 233-34 (since intended function of Exemption 5 is to protect governmental deliberation, courts must in all cases "distinguish between and treat differently 'materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other.'" (quoting *Mink*, 410 U.S. at 89)); *see also Dalitzky v. United States Small Business Admin.*, 1992 U.S. Dist. LEXIS 20480, at *9 (D. Mass. Sept. 2, 1992)(executive privilege does not extend to purely factual matters). The District Court in Massachusetts has summarized it this way: "'Exemption 5 disputes can often be resolved by the simple test that factual material must be disclosed but advice and recommendations may be withheld.'" *Massachusetts v. United States Dep't of Health and Human Servs.*, 727 F. Supp. 35, 44 (D. Mass. 1989)(quoting *Wolfe v. Department of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988)).  Release of purely factual material does not compromise any privileged information and is in accord with Congressional intent to limit the scope of Exemption 5 as narrowly as is consistent with the efficient operation of the government.  *Fine v. United States Dep't of Energy*, 830 F. Supp. 570, 570, 574 (D.

N.M. 1993)(citing S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965); *Robbins Tire & Rubber Co. v. NLRB*, 563 F.2d 724 (5th Cir. 1977)).

This minimum requirement that governmental agencies disclose the factual portions of otherwise privileged documents applies regardless of the specific privilege being claimed. *See Providence Journal*, 981 F.2d at 559 (citing *Mink*, 410 U.S. at 92)(segregable factual portions of "deliberative" document are still subject to disclosure if revelation would not compromise the private remainder of the documents); *Fine*, 830 F. Supp. at 574 (same, attorney work-product claims); *Massachusetts v. United States Dep't of Health and Human Servs.*, 727 F. Supp. at 43 (same, Exemption 5 claims, generally (quoting *Mink*, 410 U.S. at 89)); *Maine I*, 124 F. Supp. 2d at 744-45 (same, work product claims).

In this case, however, the Navy has declined to produce even the purely factual portions of the investigative report.[8]  In its memorandum, the Navy claims, in essence, that the involvement of a judge advocate in the selection of the facts and attachments included in the report imbues those facts and attachments with privilege and exempts them from production.  Def's. Mem. at 9-10.  This position should be rejected out of hand.  The mere fact that an attorney selected the facts included in the report of an aircraft mishap does not itself transform those facts into privileged work product or

---

[8] This position is out of step with the Navy's production of purely factual material in other cases.  *See, e.g., Cooper*, 558 F.2d at 276 (Navy released all factual matter in the JAG Manual Investigation, including "names, serial numbers and statements of numerous witnesses; flight schedules; audits of the pilots' flight experiences; medical reports; messages and dispatches in great number, including some containing opinions about the cause of the accident, etc."); *Hill Tower*, 718 F. Supp. at 564 (Navy produced copies of investigative reports compiled in accordance with JAGMAN concerning six separate aircraft crashes, withholding on privacy grounds only social security numbers and home addresses of objecting individuals named in reports); *cf. Ahearn v. United States Army Mat'ls & Mechanics Research Ctr.*, 580 F. Supp. 1405, 1407 (D. Mass. 1984)(Army produced factual portions of Army Inspector General's Report of Incident while withholding investigator's opinions, conclusions and recommendations).

opinion.  If that were the case, "every factual report would be protected as a part of the deliberative process." *Playboy*, 677 F.2d at 935; *see Lacy*, 593 F. Supp. at 78 (rejecting Navy's "sweeping" argument that photos attached to an investigative report by an investigator are protected because their production would expose investigators' thought processes and reasoning that such a policy would "swallow the requirement that factual matter be disclosed when requested by FOIA plaintiffs and would result in a huge mass of factual material being forever screened from public view." (citing *Vaughan v. Rosen*, 523 F.2d 1136, 1145-46 (D.C. 1975); *ITT World Comm. v. Federal Communications Comm'n*, 699 F.2d 1219, 1239 (D.C. Cir. 1983))); *Powell*, 584 F. Supp. at 1519 (rejecting agency's argument that "the very choice of which facts to present [in agency document] necessarily reveals the writer's viewpoint" (citing *Playboy*, 677 F.2d at 935)).  *But cf. Providence Journal*, 981 F.2d at 562 (finding that in specific context of personnel management decision, findings of fact may reveal subjective opinion).

## V.    THE COURT SHOULD DECLINE TO REVIEW THE INVESTIGATIVE REPORT *IN CAMERA* AND SHOULD INSTEAD ORDER THE NAVY TO PRODUCE THE REPORT TO MR. MONE.

In the conclusion of its argument, the Navy seeks entry of summary judgment against the plaintiff on his FOIA claims, or, in the alternative, that the Court review the investigative report *in camera* to make its own determination of the Navy's production obligations under the FOIA.  Def's. Mem. at 14.  Assuming that the Court is not persuaded on the basis of the existing record in this case that summary judgment against the plaintiff is warranted, then the plaintiff urges the Court to decline to inspect the investigative report *in camera*.  If the agency's affidavits fail to carry the agency's burden of demonstrating that the agency has not withheld segregable factual material,

> the court is not required to undertake lengthy *in camera*
> review to make appropriate segregation decisions. *In
> camera* review should not act as a substitute for the
> agency's responsibility to justify nondisclosure of allegedly
> factual material. . . . *Ashley*, 589 F. Supp. at 910 (citing
> *Mead Data Central, Inc. v. United States Dep't of the Air
> Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).

The Navy has not shown that the investigative report is protected by Exemption (b)(5)'s

limited umbrella, nor that the Navy has segregated and produced the factual portions of

that report. The Court should decline the Navy's invitation to allow it to do what the

Navy has not done, and should, instead, order the Navy to produce the document or

documents responsive to the plaintiff's FOIA request.

## <u>CONCLUSION</u>

For the foregoing reasons, Michael E. Mone respectfully requests that the Court:

1.    <u>DENY</u> defendant Department of the Navy's motion for summary judgment on
      his Freedom of Information Act claims;
2.    Order production of the investigative report (with all of its attachments, if any)
      and any other documents responsive to his June 11, 2002 FOIA request; and
3.    Order payment of the plaintiff's costs of pursuing this *de novo* appeal.

Alternatively, if the Court finds that the investigative report at issue is protected

under Exemption (b)(5), the plaintiff requests that the Navy be ordered to produce any

segregable factual portions of the report, and requests that the government be required to

pay his costs for this review in the proportion that the Court considers appropriate.

Certificate of Service
I hereby certify that a true copy of the above
document was served upon the attorney of record
for each other party electronically and by mail on
September 2, 2004.

_/s/ Kathryn E. Hand_____

DATED: September 2, 2004

Respectfully submitted,
Plaintiff, Michael E. Mone

_/s/ Kathryn E. Hand_____
Michael E. Mone/BBO No. 351680
Kathryn E. Hand/BBO No. 567197
Esdaile, Barrett & Esdaile
75 Federal Street
Boston, MA  02110-1904
(617) 482-0333